**UNITED STATES of America, Plaintiff,**

v.

**Eliberto ANAYA, Defendant.**

**No. 84 CR 934.**

United States District Court, N.D. Illinois, E.D.

July 26, 1985.

Steven Miller, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

William H. Theis, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Eliberto Anaya ("Anaya") has been charged in a 30-count superseding indictment (the "Indictment") with violations of federal firearms laws. Each of the odd-numbered counts, charging a violation of 18 U.S.C. § 922(a)(6) ("Section 922(a)(6)"), alleges Anaya knowingly furnished false identification (bearing the name "Jose Ceja") on a specified date [1] in connection with the acquisition of a firearm from federally licensed firearm dealer R.H. Tasso ("Tasso"). Each even-numbered court, charging a violation of 18 U.S.C. § 924(a) ("Section 924(a)"), alleges Anaya knowingly made a false statement or representation of information (Anaya's true name) Tasso was required to maintain in his records under federal law. Anaya has now moved to dismiss all 30 counts of the Indictment. For the reasons stated in this memorandum opinion and order Anaya's motion is denied.

### Odd-Numbered Counts

Section 922(a)(6) makes it unlawful:

for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

Each odd-numbered count recapitulates the statutory language in conjunction with the bare factual allegation that Anaya furnished identification bearing the name "Jose Ceja" on a specified occasion. Focusing on the phrase "material to the lawfulness of the sale," Anaya Motion To Dismiss Odd-Numbered Counts ("Odd-Numbered Mem.") [2] argues the Indictment is insufficient because it does not "allege in what manner the true identity of Eliberto Anaya was material to the lawfulness of the various sales of firearms." Anaya claims true identity is not a material fact in itself. Instead identity becomes material only if and when its misrepresentation effectively conceals a prior felony conviction, nonresidency in the state or some other condition the firearms law seeks to regulate.

That argument is founded in part on the notion Section 922(a)(6) was designed only to regulate access to firearms by certain classes of people. As the Supreme Court said in *Huddleston v. United States*, 415 U.S. 814, 824–25, 94 S.Ct. 1262, 1268–69, 39 L.Ed.2d 782 (1974):

The principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping "firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." S.Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968).

\* \* \* \* \* \*

Information drawn from records kept by dealers was a prime guarantee of the Act's effectiveness in keeping "these lethal weapons out of the hands of criminals, drug addicts, mentally disordered persons, juveniles, and other persons whose possession of them is too high a price in danger to us all to allow." 114 Cong.Rec. 13219 (1968) (remarks of Sen. Tydings). Thus, any false statement with respect to the eligibility of a person

---

1. Though some counts share the same date, each involves acquisition of a different firearm.

to obtain a firearm from a licensed dealer was made subject to a criminal penalty.

But of course the "principal purpose" of a statute is not the same thing as its entire purpose. Section 922(a)(6) was first enacted as part of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title IV"). S.Rep. No. 1097 (the "Report"), 1968 U.S.Code Cong. & Ad.News 2112, 2114 (emphasis added) defined the problem addressed by the firearms provisions of Title IV:

> The ready availability; that is, ease with which *any* person can *anonymously* acquire firearms (*including* criminals, juveniles without the knowledge or consent of their parents or guardians, narcotic addicts, mental defectives, armed groups who would supplant duly constituted public authorities, and others whose possession of firearms is similarly contrary to the public interest) is a matter of serious national concern.

That passage makes it plain Congress, while concerned with the easy access of certain classes of people to firearms, was worried as well about the unregulated distribution of firearms throughout the population as a whole. Each time *any* person (though not a felon, juvenile or member of any other specifically mentioned group) purchases a firearm under a false identity, one more weapon is loose in the nation, untraceable by law enforcement authorities and available to resurface in the context of a violent crime or some other public disruption.

■ Reflecting that concern, the Report's section-by-section commentary on Title IV states as to Section 922(a)(6) (1968 U.S.Code Cong. & Ad.News at 2203) (emphasis added):

> This paragraph prohibits the making of false statements or the use of any deceitful practice (both knowingly) by a person in connection with the acquisition or attempted acquisition of a firearm from a licensee. To invoke the prohibition, the false statement or deceitful practice

must be material to the lawfulness of the sale of the firearm under the provisions of the title. *The requirement that one who obtains a firearm from a licensee must properly identify himself is inherent in this prohibition.* This is strengthened by the recordkeeping provisions of sections 922(b)(5) and 923(d) as contained in the title.

That language was repeated in H.R.Rep. No. 1577, 1968 U.S.Code Cong. & Ad.News 4410, 4419 (dealing with the Gun Control Act of 1968, which amended, in ways not relevant to the issues in this case, the firearm provisions of Title IV). Congress' statement expressly shows (1) the statutory prohibition against false or fictitious oral or written statements was meant to be invoked only if "material to the lawfulness of the sale" but (2) the requirement of proper self-identification was material *by definition.* Congress meant to require every person acquiring a firearm to identify himself or herself, and it sought to assure as much by making the failure to do so *by itself* a violation of the statute. To put it another way, Congress made identity per se material within the terms of Section 922(a)(6). By that means Congress sought to assure the accuracy—and the efficacy—of the records required to be kept under other provisions of Title IV. See *United States v. Buck*, 548 F.2d 871, 876 (9th Cir.1977)[2] and *United States v. Crandall*, 453 F.2d 1216, 1216–17 (1st Cir.1972), both holding the illegality of a firearm sale without the seller's recording of the buyer's name perforce renders the misstatement of that name a "fact material to the lawfulness of the sale."

While Congress thus clearly intended any supplying of a false name to be a violation of Section 922(a)(6), the draftsman was not as artful as might have been desired in implementing that purpose. Furnishing false identification is specifically addressed in the statute, as is the broader category of "false or fictitious oral or written statement[s]." That treatment reflects

---

**2.** To his credit, Anaya's appointed counsel, William Theis, Esq., does not essay any specious distinction of *Buck*. Instead he urges (Odd-Numbered Mem. 3 n. *) it is simply wrong.

the distinction made in the legislative history. But the proscription against furnishing false identification is placed in the sentence in a way that might be read at odds with Congress' goal: It appears to be modified by the phrase "with respect to any fact material to the lawfulness of the sale." As a matter of normal English usage, that makes little sense. It is odd indeed to speak of furnishing false *identification* "with respect to" a material fact, while it makes perfect sense to speak of making a false *statement* "with respect to" such a fact. Nevertheless the provision as drafted is arguably susceptible to a reading that would require a distinct materiality showing as to misrepresented identity. That reading could cast doubt on the tautological analysis employed in such cases as *Buck* and *Crandall.*

True enough, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971). On the other hand *Huddleston,* 415 U.S. at 831, 94 S.Ct. at 1272 teaches (quoting *American Fur Co. v. United States,* 27 U.S. (2 Pet.) 358, 367, 7 L.Ed. 450 (1829)):

> Although penal laws are to be construed strictly, they "ought not to be construed so strictly as to defeat the obvious intention of the legislature."

To dismiss the odd-numbered counts of the Indictment on Anaya's grounds would render clear congressional intent the hostage of arguably careless draftsmanship. This Court, like others before it, declines to do so. See *Buck,* 548 F.2d at 876; *Crandall,* 453 F.2d at 1216–17; and *United States v. Gudger,* 472 F.2d 566, 568 (5th Cir.1972) (declining to follow *United States v. Benton,* 329 F.Supp. 331, 332 (D.N.H.1971), the one case to accept an argument of the variety Anaya sets out here).

■ There may be another way to read Section 922(a)(6) to avoid doing violence either to Congress' goal or to the statutory language. "Identification" can be a term broader than listing of one's name. In that light, non-name misidentification might be illegal only if independently "material to the lawfulness of the sale," while a false name would be per se material. This Court need not decide whether such a reading is a tenable one. Whether on that or any other construction, Anaya's motion to dismiss the odd-numbered counts of the Indictment is denied.

### *Even-Numbered Counts*

■ Section 924(a) provides:

Whoever violates any provision of this chapter or knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or in applying for any license or exemption or relief from disability under the provisions of this chapter, shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.

Each even-numbered count of the Indictment charges Anaya falsely stated his name as "Jose Cejas"[3] on a United States Treasury Form 4473, Firearms Transaction Record prepared in connection with his purchases of firearms. Anaya offers three grounds for dismissing the even-numbered counts:

1. Section 924(a) is merely a penalty section and does not itself create offenses separate from those for which it sets penalties.

2. Each count fails to allege a false statement, because it does not allege Anaya misstated his identity with an intent to defraud.

3. Each count fails to articulate why Anaya's true identity was material information.

Each of those arguments will be considered in turn.

---

3. This is not a misprint. Apparently the identification referred to in the odd-numbered counts was an Illinois gun owner's card in the name

"Jose Ceja," while Anaya filled out the buyer's portion of Tasso's registration records as "Jose Cejas."

Anaya's claim that Section 924(a) does not state an offense independent of Section 922(a)(6) flouts the disjunctive statutory language, which specifically imposes penalties for those who violate other provisions of the chapter *or* who knowingly make false statements with respect to information required to be kept in the records of a licensed dealer. In this instance, a glance at the legislative history confirms the sense derived from the statute itself. Section 924(a), the section-by-section discussion of the Report, states:

Provides penalties for violation, including false statements, of any provision of the title, or regulations issued thereunder.

In the face of those express references to false statements in connection with Section 924(a), no basis exists for concluding it does not create a distinct offense. See *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 106, 103 S.Ct. 986, 988, 74 L.Ed.2d 845 (1983); *Buck*, 548 F.2d at 876–77.

That conclusion is reinforced by a comparison of Section 924(a) with Section 922(a)(6). While the latter proscribes knowing false statements intended or likely to deceive made in connection with the acquisition of a firearm, Section 924(a) flatly prohibits any knowing false statement with respect to information in records maintained by dealers. It contains no express requirement that the false statement be intended to deceive. Section 924(a) therefore reaches a potentially broader range of conduct than Section 922(a)(6)—a fact indicating that the sections create distinct offenses. See *United States v. Mongiello*, 442 F.Supp. 835, 838 (E.D.Pa.1977). And much the same analysis extends to the materiality requirement, also included in Section 922(a)(6) but not in Section 924(a). See *United States v. Sullivan*, 459 F.2d 993, 994 (8th Cir.1972); *Mongiello*, 442 F.Supp. at 837–38.

It is not true, as Anaya intimates, that all conduct violating Section 922(a)(6) will necessarily constitute a violation of Section 924(a). For example, oral misrepresentations or other misrepresentations made to a dealer that do not find their way into the dealer's required records may violate the former section but not the latter. But even if Anaya's suggestion were correct as to the conduct with which he is charged,[4] that fact would not compel the conclusion Anaya urges. Just last Term, *Ball v. United States*, —— U.S. ——, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740 (1985) held a defendant could be prosecuted simultaneously for receiving and possessing the same firearm under 18 U.S.C. §§ 922(h)(1) and 1202(a)(1) even though "proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon" (*Ball*, 105 S.Ct. at 1672, emphasis in original). *Ball* went on to hold, however, a defendant could be punished under only one of those statutes. If the *Ball* reasoning applies to the present case, all that follows is that even if Anaya's alleged conduct were punishable under only one of Section 922(a)(6) and Section 924(a)—a question this Court does not purport to decide now—that would not preclude his prosecution under both.

▪ Anaya's second and third arguments are really just the converse of his first. If Section 924(a) does create a false statement offense, he contends, then the offense it creates is identical to the offense created by Section 922(a)(6)—down to the elements of intent and materiality. But the easy answer to that contention again focuses on the statutory language: Section 922(a)(6) expressly mentions intent and materiality, while Section 924(a) does not. That contrast creates the plain inference that Congress meant to omit the added elements from the latter section. Indeed, given the overall purposes of Title IV discussed earlier in this opinion, it is not at all surprising Congress should have chosen to create something approaching a strict liability offense in an effort to assure the effectiveness of its mechanism for tracking

---

**4.** This opinion need not pause on the possibility Anaya's conduct charged in the odd-numbered counts is different from that in the even-numbered counts (because the misrepresentations are "different," see n. 3).

the movement of firearms through the nation.

Anaya's effort to read an intent component into Section 924(a) raises one other issue. Anaya notes the common law does not punish as a falsehood the use of an alias in the absence of an intent to defraud. From that he concludes the failure to allege such intent in the even-numbered counts is effectively a failure to allege that his use of the name Jose Cejas constituted a *false* statement.

But of course common-law principles do not necessarily inform statute law,[5] and especially not when those principles would contravene a clear purpose of the statutory scheme. As this opinion has noted more than once, Title IV was designed to put in place a registration scheme that would afford law enforcement officials some control over the distribution of firearms. Maintaining accurate records of gun acquisition is a cornerstone of that system, as a means of both tracking firearms and regulating their acquisition.

Both the statutory scheme and the legislative history render unavailing Anaya's invocation of case law in the passport area, which does import a specific intent-to-defraud requirement. *United States v. Wasman*, 641 F.2d 326 (5th Cir.1981); *United States v. Cox*, 593 F.2d 46 (6th Cir.1979). Though counsel's argument may get high marks for sheer ingenuity, in terms of the merits it is wholly unpersuasive toward the proposition that the federal firearm registration system, intended to lay down a traceable chain of ownership, could tolerate the free (though innocent) use of aliases.

As with the odd-numbered counts, the gossamer web of Anaya's motion to dismiss the even-numbered counts of the Indictment breaks at several points. That motion too is denied.

### Conclusion

Anaya's motions to dismiss both the even-numbered and the odd-numbered

counts of the Indictment are wanting in merit. Each is denied.

---

5. One response the United States makes to this point (Mem. 5–6) is that Illinois statutory law (and Illinois case law involving regulated industries) has changed the common-law doctrine. That line of argument, challenged at Anaya R.Mem. 2, would unnecessarily broaden the areas of analysis called for to decide this case. No opinion is expressed on those topics.