**Stanley L. DAVIS, Petitioner-Appellee,**

**v.**

**Robert HERRING, Sheriff of Lee County, Mississippi and Edwin L. Pittman, Attorney General of the State of Mississippi, Respondents-Appellants.**

No. 83–4421.

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1986.

Bill Patterson, Donald G. Barlow, Edwin L. Pittman, Atty. Gen., Jackson, Miss., for respondents-appellants.

---

Duncan Lott (Court Appointed Co-Counsel) Joe Ray Langston, Booneville, (Court Appointed), Booneville, Miss., for petitioner-appellee.

Before RUBIN, RANDALL, and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The panel has decided, *sua sponte*, to vacate its earlier opinion in this case,[1] and to substitute instead the following.

The habeas corpus petitioner fired his pistol into a tavern, killing the owner. Indicted separately for both murder and the felony of shooting into an occupied building, he was tried on the murder indictment alone. When the jury convicted him only of manslaughter, the State attempted to prosecute him in a second trial for the shooting felony. He objected on double jeopardy grounds, and, after exhausting his state remedies, obtained an injunction in federal court against the second prosecution.

The murder statute under which Davis was tried requires the State to prove, in the alternative, either a deliberate design to kill or an unintentional killing that resulted from the commission of either a felony or a dangerous and depraved act. When the accused was tried for murder, the state failed to adduce any evidence of a deliberate design to kill. The murder charge, therefore, must have rested on a charge either of committing a dangerous act or on the underlying felony of shooting into an occupied building for which he had already been indicted. Comments by the judge at trial support this conclusion. Although a mistake in the jury charge prevented the jury from returning a verdict of felony murder, the error cannot justify a second prosecution. We hold that proof of either the felony or dangerous act was a necessary element of the murder charge and, therefore, a lesser-included offense. The jury verdict implicitly acquitted the accused of murder and the double jeopardy clause precludes his retrial on either lesser-included offense. Accordingly, we affirm the judgment of the district court.

## I.

On the night of October 27, 1981, Stanley L. Davis started a barroom brawl. The owner of the bar, Wayne Watson, broke up the fight and Davis left. Shortly after midnight he returned in a pickup truck, accompanied by his stepson, and fired six shots into the bar as he drove past. One bullet struck and killed Watson.

Davis was indicted for murder in violation of the Mississippi statute set forth in full in the footnote.[2] That statute defines murder as the killing of a human being either with deliberate design to cause death; or when done in the commission of an act eminently dangerous to others and evincing a depraved heart; or when done without intent to kill by a person engaged in the commission of any felony other than one that is chargeable as a capital offense. A separate provision of the Mississippi

---

1. *Davis v. Herring*, 783 F.2d 511 (5th Cir.1986).

2. Miss.Code Ann. § 97–3–19 (1972 & Supp.1985) provides:
   (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
   (a) When done with deliberate design to effect the death of the person killed, or of any human being;
   (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual;
   (c) When done without any design to effect death by any person engaged in the commission of any felony other than rape, kidnapping, burglary, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or felonious abuse and/or battery of a child in violation of subsection (2) of section 97–5–39, or in attempt to commit such felonies.

Code, set forth in the footnote,[3] makes shooting into a building which is usually occupied a felony, hence a charge on which felony murder may be based. After obtaining the murder indictment, but before bringing it to trial, the State sought and obtained a separate indictment against Davis for committing this felony.

At the murder trial, no evidence was presented to show that Davis intended to kill Watson, or even that Watson was visible through the curtained windows of the bar as Davis drove by more than one hundred feet away. The State directed its efforts toward proving that Davis had been the person who shot into the bar, as the jury found, while Davis had contended that he had been elsewhere, and implied that his stepson was the culprit who had fired the gun. His stepson testified, however, that Davis had committed the crime in his presence, and the jury evidently credited his testimony.

After the evidence had been adduced, the trial judge discussed jury instructions with counsel. Counsel for the State referred to the felony of shooting into an occupied building as an underlying offense that eliminated the necessity of proving intent. The judge commented, "Well, gentlemen, we have got two areas of consideration here in determining this question of murder or manslaughter. Actually, the only evidence we have got of murder is the use of the deadly weapon and shooting into an occupied building which creates a presumption that a jury can consider as being malice.... [T]here was no attempt to kill stated by the Defendant nor anyone else in the State's case...." Thus, it is likely that, in the trial judge's opinion, a verdict might have been directed on the issue of deliberate design to kill and the State's evidence supporting the murder charge

would have depended solely on proof of an underlying "eminently dangerous act" or on the felony for which he had been separately indicted.

Both murder and manslaughter charges were given to the jury. An erroneous charge was also given, instructing the jury that they must find Davis guilty of manslaughter, rather than murder, if they believed that he shot out the windows of the bar without malice aforethought, and without any intent to kill Watson. This charge prevented the jury from convicting Davis under the felony-murder provision of the statute, but the error could not have been appealed by the State.[4] Despite the efforts of the prosecution to obtain a murder conviction, Davis was convicted only of manslaughter and sentenced to 18 years of imprisonment.

The State then attempted to prosecute Davis on the same facts for the felony of shooting into an occupied building. Patently, the prosecutor was not satisfied with the punishment imposed at the first trial and sought a second conviction in order to obtain a consecutive sentence. Davis moved to dismiss the indictment as twice jeopardizing him, but his motion was denied by the Mississippi state courts. Davis then brought this habeas corpus action in federal court to enjoin the second prosecution.

An evidentiary hearing was held before a federal magistrate at which the State acknowledged that it had no newly discovered evidence and that the testimony presented at the second trial would be identical to that already presented at the murder trial. Although Davis had fired five or six shots into the tavern, the State conceded at the hearing that the shots were fired in such rapid succession and within such a brief period of time that they were the result of a single impulse and constituted no more

---

3. Section 97–37–29 of the Mississippi Code provides:

   If any person shall willfully and unlawfully shoot or discharge any ... firearm ... into any ... building usually occupied by persons, whether actually occupied or not, he shall be guilty of a felony whether or not anybody be injured thereby.

4. *See Arizona v. Manypenny*, 451 U.S. 232, 245–47, 101 S.Ct. 1657, 1666–67, 68 L.Ed.2d 58 (1981); *Maryland v. Soper*, 270 U.S. 9, 46 S.Ct. 185, 70 L.Ed. 449 (1926); *United States v. Sanges*, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892).

than a single criminal act. The State does not now attempt to qualify this concession.

The magistrate, in his report, first attempted to ascertain whether the state legislature had intended the two offenses of murder and shooting into an occupied building to be punished separately. Finding no indication of legislative intent either way, he concluded, under the test established in *Blockburger v. United States*,[5] that each offense required proof of an element that the other did not and, that, therefore, the offenses were not the same for double jeopardy purposes. He noted that the shooting felony may have been a lesser-included offense of the felony-murder provision of the statute under which Davis had been indicted. He held, however, that, at the second trial, the State would do no more than attempt to prove on identical evidence that Davis was guilty of an act that had already been necessarily established as an essential element of the murder charge for which he had been tried and implicitly acquitted. The magistrate found, therefore, that the second trial was prohibited under the "same evidence" test of *Illinois v. Vitale*[6] and *Brown v. Ohio*.[7]

## II.

The double jeopardy clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."[8] It protects against three different governmental abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense.[9] In order to protect against successive prosecutions, as well as multiple convictions, federal courts have the power to enjoin state criminal proceedings that would constitute double jeopardy[10] as an exception to the comity doctrine of *Younger v. Harris*.[11]

When multiple punishments are imposed at a single trial, their propriety has consistently been described by the Supreme Court as a matter solely of statutory construction.[12] The legislature may impose whatever punishments it sees fit for any combination of crimes subject only to the limitations of the eighth amendment. A court, therefore, may impose consecutive sentences whenever the legislature intended them. If the legislative intent is clear, the Constitution requires only that it be obeyed by the sentencing court.[13] If the legislature's intent is uncertain, however, the Supreme Court has instructed that courts apply the test of *Blockburger v. United States*[14] as a "rule of statutory construc-

---

**5.**   284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

**6.**   447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

**7.**   432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

**8.**   U.S. Const., art. V.

**9.**   *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664 (1969).

**10.**   *See Abney v. United States*, 431 U.S. 651, 661–62, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977); *see also Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 3083–84, 82 L.Ed.2d 242 (1984); *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294 104 S.Ct. 1805, 1810–11, 80 L.Ed.2d 311 (1984); *Jeffers v. United States*, 432 U.S. 137, 151 n. 18, 97 S.Ct. 2207, 2216 n. 18, 53 L.Ed.2d 168 (1977).

**11.**   401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**12.**   *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275, 285 (1981); *see also Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983); *Whalen v. United States*, 445 U.S. 684, 701–02, 100 S.Ct. 1432, 1442–43, 63 L.Ed.2d 715, 729–30 (1980) (Rehnquist, J., dissenting); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 193 (1977).

**13.**   In my view, the sounder method of statutory construction would permit the imposition of only a single sentence for a single criminal act, even if the defendant is convicted under more than one statute. *See United States v. Rodriguez*, 612 F.2d 906, 925–30 (5th Cir.1980) (en banc) (Rubin, J., dissenting) *aff'd sub nom. Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). This view, unfortunately, has not prevailed.

**14.**   284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

tion" to determine whether the legislature intended that the two offenses be punished cumulatively.[15]  *Blockburger* upheld the imposition of multiple sentences imposed at one trial, holding that "the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact that the other does not." [16]  The Court has further specified that the *Blockburger* test is to be applied to the elements of proof required by the statute and not to the actual evidence or proof adduced at trial in a given case.[17]

In this case, the statutory elements of the crimes of premeditated murder and of shooting into an occupied building would not be the same under the *Blockburger* test.  The State makes this argument and no other, either to the court below or on appeal.  While the State is correct in its analysis, the result is not dispositive.

The Supreme Court,[18] this and other circuit courts,[19] and various commentators [20] have consistently distinguished between situations involving multiple punishments imposed at a single trial of several offenses and those involving successive trials for related offenses based on the same criminal conduct.  The *Blockburger* test remains an initial step in the analysis, but it is not necessarily the final one.  If the legislature did not intend to punish the defendant cumulatively for the multiple offenses committed by his single act, the state cannot try him successively for them.[21]  If the *Blockburger* test establishes that only one offense has been committed, a second trial would therefore violate both the Constitution and the legislature's presumed intent.

A second trial, however, implicates constitutional protections that multiple punishments imposed at a single trial do not.  The protection against repeated trials is the "controlling constitutional principle" of the double jeopardy clause.[22]  "At the heart of [the double jeopardy clause] is the concern that permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm Government with a potent instrument of oppression." [23]  The bar against reprosecution "ensures that the State does not make repeated attempts to convict an individual, thereby exposing him to continued embarrassment, anxiety and expense, while increasing the risk of an

---

**15.** *See e.g., Albernaz*, 450 U.S. at 337, 101 S.Ct. at 1141; *Whalen*, 445 U.S. at 691, 100 S.Ct. at 1437.

**16.** 284 U.S. at 304, 52 S.Ct. at 182.

**17.** *Illinois v. Vitale*, 447 U.S. 410, 416 & n. 6, 100 S.Ct. 2260, 2265 & n. 6, 65 L.Ed.2d 228 (1980); *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977); *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616 (1975); *United States v. Cowart*, 595 F.2d 1023, 1029 (5th Cir.1979); Thomas, RICO Prosecutions and the Double Jeopardy/Multiple Punishment Problem, 78 NW.U.L.Rev. 1359, 1375 & n. 75 (1984).

**18.** *See, e.g., Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 2415–19, 85 L.Ed.2d 764 (1985); *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983); *Whalen v. United States*, 445 U.S. 684, 697, 100 S.Ct. 1432, 1440, 63 L.Ed.2d 715 (1980) (Blackmun, J., concurring); *Brown v. Ohio*, 432 U.S. 161, 165–66, 97 S.Ct. 2221, 2225–26, 53 L.Ed.2d 187 (1977); *Jeffers v. United States*, 432 U.S. 137, 147, 97 S.Ct. 2207, 2214, 53 L.Ed.2d 168 (1977).

**19.** *See, e.g., United States v. Rodriguez*, 612 F.2d 906, 923 (5th Cir.1980), *aff'd sub nom. Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), *United States v. Phillips*, 664 F.2d 971, 1007 n. 48 (5th Cir.1981); *Jordan v. Virginia*, 653 F.2d 870, 873 (4th Cir.1980); *United States v. Sabella*, 272 F.2d 206, 211 (2d Cir. 1959); *see also United States v. Thomas*, 757 F.2d 1359, 1373 (2d Cir.1985) (Newman, J., concurring & dissenting); *United States v. Smith*, 757 F.2d 1161, 1171 (11th Cir.1985) (Clark, J., dissenting).

**20.** *Thomas, supra* note 17 at 1363–64; Note, The Double Jeopardy Clause as a Bar to Reintroducing Evidence, 89 Yale L.J. 962, 966 & n. 24 (1980); Note, Twice in Jeopardy, 75 Yale L.J. 262, 267 (1965); Note, 11 Stan.L.Rev. 735 (1959).

**21.** *Brown*, 432 U.S. at 166, 97 S.Ct. at 2226; *Jordan v. Virginia*, 653 F.2d 870, 873 (4th Cir. 1980).

**22.** *United States v. Wilson*, 420 U.S. 332, 346, 95 S.Ct. 1013, 1023, 43 L.Ed.2d 232 (1975).

**23.** *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642, 649 (1977).

erroneous conviction or an impermissibly enhanced sentence."[24]

Therefore, the Court has declared that, even if, under the *Blockburger* test, two offenses are sufficiently different to permit the imposition of consecutive sentences at a single trial, that "test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense," and that "successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first."[25] This has been called the "same evidence" test, and both the magistrate and the district court, considering that such a test is required by the Supreme Court decisions, applied their interpretation of that test. Whether or not the Supreme Court has so held, and, if so, whether that test would be applicable to the facts here, however, we do not undertake to decide[26] because the judgment can be affirmed on another basis.

Apart completely both from the *Blockburger* and the same-evidence tests, a trial for one offense precludes retrial for all lesser-included offenses if at the first trial the accused is acquitted of a charge that contains a lesser-included offense. In that event, he may not again be tried for the lesser-included offense, even if it was not charged separately at the first trial.[27]

Thus in *Harris v. Oklahoma,*[28] a defendant convicted of felony murder for a killing committed during the course of an armed robbery successfully invoked the double jeopardy clause to prevent his later prosecution for the armed robbery. Even though the *Blockburger* test was not satisfied, the Court said, "[w]here, as here, conviction of a greater crime cannot be had without conviction of a lesser crime, ... the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one."[29] If, instead of being convicted of the greater offense, the accused is found guilty of one of several lesser-included offenses, he is implicitly acquitted of the greater offense[30] and is not subject to retrial for another of the lesser-included offenses.

This application of the *Harris* rule is supported by the Court's interpretation of *Harris* in *Illinois v. Vitale,*[31] in which the Court considered whether a driver's conviction for failing to reduce speed barred his later prosecution for the greater offense of killing a person by reckless driving. The Court summarized its holding in *Harris* with approval: "a person who has been convicted of a crime having several elements included in it may not subsequently be tried for a lesser-included offense—an offense consisting solely of one or more of the elements of the crime for which he has

---

**24.** *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 2540–41, 81 L.Ed.2d 425 (1984) (citing *United States v. Wilson,* 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975); *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957)); *see also Ashe v. Swenson,* 397 U.S. 436, 452, 90 S.Ct. 1189, 1198, 25 L.Ed.2d 469 (1970) (Brennan, Douglas, Marshall, JJ., concurring).

**25.** *Brown,* 432 U.S. at 166 n. 6, 97 S.Ct. at 2226 n. 6. Recently, three justices have taken a more restrictive view. *See Illinois v. Zegart, cert. denied,* 452 U.S. 948, 101 S.Ct. 3094, 69 L.Ed.2d 961 (1981) (Burger, C.J., Blackmun & Rehnquist, JJ., dissenting from denial of certiorari); *Thigpen v. Roberts,* 468 U.S. 27, 104 S.Ct. 2916, 2921–22, 82 L.Ed.2d 23 (1984) (Rehnquist, J., dissenting).

**26.** *See Thigpen v. Roberts, supra,* 468 U.S. at 33, 104 S.Ct. 2920 (Rehnquist, J., dissenting).

**27.** *See Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 2542, 81 L.Ed.2d 425 (1984); *Jeffers v. United States,* 432 U.S. 137, 150–51, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1977).

**28.** 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

**29.** *Id.* at 682–83, 97 S.Ct. at 2913 (citation omitted).

**30.** *Green v. United States,* 355 U.S. 184, 186–87, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957); *see Poland v. Arizona,* — U.S. ——, 106 S.Ct. 1749, 1753 n. 2, 90 L.Ed.2d 123 (1986); *Lowery v. Estelle,* 696 F.2d 333, 341 (5th Cir.1983).

**31.** 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

already been convicted." [32] This term, the Court applied the same rule to find that a guilty plea to the lesser offense of aggravated robbery barred a subsequent trial for the greater offense of aggravated murder, which is defined as causing death while fleeing after an aggravated robbery. [33]

*Whalen v. United States* [34] and *Harris* make clear that, when violation of a complex statute is charged, the *Blockburger* test may be modified to require that the court examine only the relevant portions of the statute and the actual underlying felony. [35] If the murder charge depended on proof of a specific felony, then that felony is a lesser-included offense, even though it might not always be essential to the murder charge because other felonies might also have supported a conviction.

### III.

The state argues that, because Davis was convicted of manslaughter, he is protected only from further prosecution for that offense. The jury had the opportunity to return a verdict for murder, however, and its manslaughter verdict is an implicit acquittal of the murder charge for double jeopardy purposes. [36] Davis is, therefore, protected from reprosecution for any lesser offense that was included in the murder charge. The shooting felony would be a lesser-included offense if that felony or "eminently dangerous act" had been relied upon under the felony-murder or reckless-murder provisions of paragraphs (b) and (c) of the Mississippi statute under which Davis was indicted.

The State does not contend that, under the murder indictment, Davis could not have been convicted of felony murder and we do not intimate an opinion as to whether the indictment would have allowed this result had the State raised the issue in the court below and on appeal in this court. [37] The State instead argues that the erroneous jury charge prevented the jury from convicting him of murder on that basis and that, consequently, he was not in jeopardy for felony murder. Yet jeopardy may attach to charges that, through errors of law or strategy, are not ultimately presented to the jury.

As the Supreme Court found in *Sanabria v. United States*, [38] a crime charged in the indictment cannot be the basis for reprosecution at a subsequent trial even if that charge, through legal error, fails ultimately to reach the jury. The defendant in *Sanabria* had been indicted for numbers betting and horse racing under a single statute that prohibited gambling. The trial judge, erroneously interpreting the statute, ruled that it did not cover numbers betting and struck all evidence pertaining to that count. The judge then found insufficient evidence of any horse-racing offense and acquitted the defendant of all charges. The government sought a second trial solely on the numbers-betting offense, but the Supreme Court held that this would constitute double jeopardy. Under a correct interpretation of the law, the numbers-betting count had been charged in the first indictment, even though the judge's error in conducting the trial resulted in the exclusion of all evidence on this charge. Noting

---

**32.** *Id.* at 421, 100 S.Ct. at 2267. *See also Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

**33.** *Morris v. Mathews,* —— U.S. ——, 106 S.Ct. 1032, 1037, 89 L.Ed.2d 187 (1986).

**34.** 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

**35.** *See id.* at 693–95, 100 S.Ct. at 1439; *Harris,* 433 U.S. at 682–83, 97 S.Ct. 2912, 1913.

**36.** *Green v. United States,* 355 U.S. 184, 186–87, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957); *Ohio v.*

*Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 2542, 81 L.Ed.2d 425 (1984); *see Lowery v. Estelle,* 696 F.2d 333, 341 (5th Cir.1983).

**37.** *See First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 732 F.2d 480, 488 n. 7 (5th Cir.1984); *City of Waco v. Bridges,* 710 F.2d 220, 227 (5th Cir.1983); *cert. denied sub nom., Bridges v. McLennan County,* 465 U.S. 1066, 104 S.Ct. 1414, 79 L.Ed.2d 741 (1984).

**38.** 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

that the primary purpose of the double jeopardy clause is to prevent successive trials,[39] the Court wrote:

> In deciding whether a second trial is permissible here, we must immediately confront the fact that petitioner was acquitted on the indictment. That "[a] verdict of acquittal ... [may] not be reviewed ... without putting [the defendant] twice in jeopardy, and thereby violating the Constitution" has recently been described as "the most fundamental rule in the history of double jeopardy jurisprudence." ... The fundamental nature of this rule is manifested by its explicit extension to situations where an acquittal is "based upon an egregiously erroneous foundation" ... "Thus when a defendant has been acquitted at trial he may not be retried on the same offense, even if legal rulings underlying the acquittal were erroneous." [40]

■ Moreover, as we have already observed, the trial judge stated that there was no evidence of the "deliberate design to effect" death required by the statute. As best we can discern from the State record, the murder charge appears not to have been based on a showing of premeditated intent. Davis had already been indicted for the underlying felony and both the judge and counsel referred to it in formulating the jury charge. The jury may, therefore, have considered whether Davis committed the felony or the dangerous act of firing into a building in deciding whether or not he was guilty of murder. We hold, therefore, that the shooting felony was a lesser-included offense of the murder charge, as Davis contends, and the State has made no argument below or on appeal to refute this contention.

We note that the double jeopardy clause would neither have prevented the State from prosecuting both indictments at the first trial nor from bringing charges in a second trial that merely rested upon a substantial overlap in evidence. This would be the case, for example, if the same testimony and evidence were relied upon to establish two independent crimes such as a conspiracy and a substantive offense. In this case, however, a single criminal act, necessarily established at the murder trial and essential to both the charge and conviction at that trial, is the only crime that the State seeks to reprosecute.

In view of the conclusion we have reached, we need not consider the correctness of the magistrate's conclusion that reprosecution would be unconstitutional under the same evidence test applied in *In re Nielsen*,[41] *Vitale*, and *Brown*.

For these reasons, we AFFIRM the judgment of the district court.

---

**39.** *Id.* at 63, 98 S.Ct. at 2178.

**40.** *Id.* at 64, 98 S.Ct. at 2178–79 (quoting in part *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977); *Fong Foo v. United States*, 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962))

(citations omitted); *see also Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984).

**41.** 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889).