**UNITED STATES of America,
Respondent-Appellee,**

v.

**Russell Floyd LONG,
Petitioner-Appellant.**

No. 74–3458.

United States Court of Appeals,
Ninth Circuit.

Oct. 20, 1975.

Michael E. Hurley (argued), Phoenix, Ariz., for petitioner-appellant.

W. Ronald Jennings (argued), U. S. Atty., Phoenix, Ariz., for respondent-appellee.

## OPINION

Before TRASK and WALLACE, Circuit Judges, and RENFREW,* District Judge.

TRASK, Circuit Judge:

Long appeals from his conviction after a jury trial on two counts of making false statements in the acquisition of firearms in violation of 18 U.S.C. sections 922(a)(6) and 924(a). We affirm.

On February 25, 1974, Long's wife contacted the F.B.I. through her attorney and requested an interview. The

---

* Honorable Charles B. Renfrew, United States District Judge for the Northern District of California, sitting by designation.

next day she met with an agent and related that she had left the home which she shared with her husband because she feared for her safety and was fearful of becoming involved in violations of the law.[1] According to Mrs. Long, Mr. Long had taken her to the homes of two federal judges in Phoenix, Arizona and told her that he was going to arrange for their deaths. She also credited statements to him that he had been buying up guns in Phoenix and that he was storing explosives in their house.

On March 26, 1974, Mrs. Long went to her home with F.B.I. agents and signed a consent form allowing the agents to search the house. At the same time she took some of her own possessions from the house. The keys which Mrs. Long had for the house no longer fit the locks and so entrance was gained by removing a window in a storage building next to the house. In the storage building the agents noted a .357 magnum firearm hanging on a wall. The serial number was copied by the agent and the gun was traced to a Phoenix pawnshop. Upon investigation, the F.B.I. learned that the gun had been purchased by Long using the name Roy Smith. Long had bribed the salesman at the store to allow him to obtain the gun under the false name. It was also discovered that Long had purchased another pistol at the same time, this one was a .44 revolver.

Based on this information, a search warrant was obtained and the house was searched on April 8, 1974, but no guns were found. On April 9, Mrs. Long again accompanied the agents to the house and signed a form consenting to a search. She also retrieved more of her personal possessions from the house at that time. The agents found the .357 and .44 revolvers in the attic under the insulation. Long was then charged with the two violations.

Long first claims that his conviction should be reversed because it is based on evidence which is the product of illegal searches. It is asserted that Mrs. Long could not give a valid consent to search the house because she did not have joint access or control of the house within the meaning of *United States v. Matlock*, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). It cannot be convincingly argued that Mrs. Long as a joint owner of the house did not have the right to enter the house. Her husband was not her lessee who had the exclusive right of possession of the house. They had shared it until Mrs. Long was forced to leave due to her fear of her husband. Mrs. Long had a joint right to control the house with her husband and in fact exercised that right at the times she accompanied the agents to the house by collecting her personal belongings from the house while the agents were conducting the searches. Mrs. Long's consent was valid. *United States v. Matlock, supra; see United States v. Wilson*, 447 F.2d 1 (9th Cir. 1971), *cert. denied*, 404 U.S. 1053, 92 S.Ct. 723, 30 L.Ed.2d 742 (1972).

Long next argues that he was improperly convicted and sentenced on two counts when the facts only support one offense. He claims that his supplying of false information is only one crime even though he purchased two guns. Since Long was sentenced to consecutive sentences, this is a live issue. In support of his position Long cites a number of cases which held that where interstate transportation of something is forbidden, only one unit of prosecution is present even though the defendant transported more than one prohibited item in the single interstate shipment.[2] However, in those

---

1. Mrs. Long did not return to live at the house she formerly shared with her husband. She obtained separate housing, the location of which she kept secret from Mr. Long. However, she left a substantial amount of her personal possessions in the house.

2. *E. g., Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (transporting more than one woman in the same interstate movement was only one unit of prosecution for purposes of the Mann Act); *United States v. Carty*, 447 F.2d 964 (5th Cir. 1971) (interstate transportation of three stolen firearms in the same trip presented only one unit of prosecution).

cases the basis on which Congress was legislating was the interstate transportation. Since there was only one instance of interstate movement, it was proper to hold that this was the unit of prosecution which Congress had intended. In the present case the statute makes it unlawful

> "for any person in connection with the acquisition  .  .  .  of any firearm  .  .  .  from a  .  .  .  licensed dealer  .  .  .  knowingly to make any false or fictitious oral or written statement  .  .  .  intended or likely to deceive such  .  .  .  dealer  .  .  .  with respect to any fact material to the lawfulness of the sale  .  .  .  ." 18 U.S.C. § 922(a)(6).

Long filled out a separate form for each gun and thus gave a false statement in connection with the sale of each one. The unit of prosecution proscribed by Congress was the giving of false information. Since Long gave false information on each separate form for each gun, it is clear that two separate violations of the law occurred and each was a proper unit of prosecution.

■ Appellant's next assignment of error arises out of a statement made by the district judge at sentencing. After sentencing Long to the maximum 5 years imprisonment and a $5,000 fine on each count, the judge continued:

> "Each of these sentences shall be and is made consecutive—consecutive, not concurrent-consecutive.

> "Now, Mr. Long, you have 120 days to apply for a reduction in sentence. If the fine is paid, I might consider a motion to reduce sentence, if made within the 120-day period, to something less than the ten years. I am not saying how much less, because I am confident that you are a danger to the community, that you don't have sufficient community ties by wife or children any more to keep you out of trouble."

Relying on *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), and *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), appellant contends that his sentence was improper because he was unable to move for a reduction in sentence under the judge's terms because he did not have the money to pay the fine. Thus, he concludes, he may have been sentenced to a longer term than a defendant who could have afforded to pay the fine.

■ Appellant's reliance on *Tate* and *Williams* is misplaced. In each of those cases the Court was dealing with a state statute the consequences of which was to impose jail sentences in excess of the penalty otherwise imposed when the defendant could not afford to pay a fine. In the present case, however, the sentence imposed by the district judge was within the statutory limit and was not to be extended because Long could not pay a fine. The judge merely offered to take into consideration the payment of the fine in a hypothetical motion for reduction of sentence. The decision whether to reduce a sentence is within the sound discretion of the trial court. *United States v. Maynard*, 485 F.2d 247 (9th Cir. 1973). We find nothing improper in the offer of the district judge to take into account the payment of the fine in deciding whether to reduce the sentence.

We have carefully examined appellant's numerous other assignments of error addressed to rulings upon evidentiary matters and rejection of appellant's request to invoke the rule for exclusion of witnesses and conclude that they are without merit. We have also considered each of the arguments presented by appellant in his supplemental *pro se* brief. We find those arguments to be without merit.

The judgment is affirmed.