**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Linda Sue EVANS,
Defendant–Appellant.**

**No. 87-3427.**

United States Court of Appeals,
Fifth Circuit.

Aug. 18, 1988.

Diane Polan, New Haven, Conn., Ronald J. Rakosky, New Orleans, La. (court-appointed), for defendant-appellant.

Renee Clark McGinty, Curtis Collier, Asst. U.S. Attys., John P. Volz, U.S. Atty., New Orleans, La., for plaintiff-appellee.

ON SUGGESTION FOR
REHEARING EN BANC

Before BROWN, GEE, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant-defendant Evans has filed a Suggestion for Rehearing En Banc raising

only one contention, namely, that our initial decision herein, *United States v. Evans*, 848 F.2d 1352, 1361–62 (5th Cir.1988), erred by holding that a single false statement or furnishing of false identification made in connection with the purchase of both a firearm and ammunition on one occasion constituted two separate offenses under 18 U.S.C. § 922(a)(6),[1] and that hence count four (UZI rifle, purchased at Gretna Gun Works, February 10) was not multiplicious with count seven (ammunition, purchased at Gretna Gun Works, February 10) and count six (Ruger rifle and Browning pistol, Sportsman's Guns and Accessories Shop, February 11) was not multiplicious with count eight (ammunition, Sportsman's Guns and Accessories Shop, February 11). We agree with Evans' contention and, treating the Suggestion for Rehearing En Banc as a petition for panel rehearing, we grant rehearing and modify our prior opinion and holding accordingly.

The question presented is whether a single act of knowingly furnishing a false driver's license in the name of another person in connection with the acquisition in one purchase, on the same occasion, of both a firearm and ammunition, constitutes, on the one hand, but a single violation of section 922(a)(6) or, on the other hand, two separate violations of that statute.[2] We

---

1. Section 922(a) provides in pertinent part:
   "(a) It shall be unlawful—
   "....
   "(6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter."

2. The government suggests that on each occasion there were two false statements, the Bureau of Alcohol, Tobacco and Firearms registration form, Form 4473, for each firearm purchased, which Evans falsely signed in the name of Louise Robinett, and also a separate sales receipt (not covering the firearms) for each ammunition purchase, which she also falsely signed in the name of Louise Robinett. We do not decide what significance those facts would have had this been the theory of the indictment or prosecution. The theory of the indictment and prosecution, however, was otherwise, as in the relevant counts (four, six, seven, and eight) only the same single making of a false statement and furnishing false identification was alleged as to each occasion, namely, "furnishing a Louisiana Driver's License Number 002736338 in the name of Louise Robinett, whereas, in truth and in fact, as LINDA SUE EVANS then well knew, that she was not Louise Robinett but LINDA SUE EVANS since Louise Robinett died on April 4, 1949."
   Thus, as to each occasion only one act constituting the making of a false statement and/or the furnishing of false identification is alleged, namely, the furnishing of the Robinett driver's license; and only one thing false about that is alleged, namely, that it represented Linda Sue Evans as Louise Robinett (although it is alleged that the license shows a date and place of birth, it is not alleged that either of these is false as to either Evans or Robinett). Counts four, six, seven, and eight make no reference to Form 4473 or the sales receipts; nor did the court's charge to the jury in respect to those counts, the charge in that regard being limited to "furnishing a Louisiana driver's license number 002736338 in the name of Louise Robinett, whereas in truth and in fact, as she then well knew, she was not Louise Robinett but Linda Sue Evans since Louise Robinett had died on April 4, 1949."
   It is, of course, theoretically possible that on each occasion Evans twice separately furnished the Robinett driver's license, once for the firearm and again for the ammunition. However, there is no evidence of this. Nor has the government ever contended that this is what happened. The indictment does not so suggest, and there is nothing in the charge requiring the jury to find that that occurred in order to convict on both the firearm and the ammunition counts. Similarly, the indictment does not allege, the charge does not require a finding, and the evidence does not establish that the firearms and ammunition referenced in these counts were on each occasion purchased other than together in one single, simultaneous purchase and acquisition of both. *See United States v. Hodges*, 628 F.2d 350, 352 (5th Cir.1980).
   It is hence unnecessary for us to determine what constitutes more than one making of a false statement or furnishing of false identification in connection with determining whether multiple section 922(a)(6) offenses have been committed on a single occasion involving acquisition of one or more items from a single dealer. *See, e.g., United States v. Mastrangelo* 733 F.2d 793, 800–02 (11th Cir.1984) (false statement on form, and the same false information on driver's license furnished, to purchase one pistol on one occasion is but one offense); *United States*

conclude that in such an instance there is but a single violation of section 922(a)(6).

As it is beyond doubt that Congress had the power to punish as two offenses the single making of one false statement in connection with one purchase on the same occasion of both a firearm and ammunition, the question is whether it did so. Possible vagueness and related due process concerns (which we determine are not implicated here) aside, this, in turn, is a question of congressional intent in enacting the relevant statutory provision or provisions. To resolve that question of intent, our initial opinion relied in large part on the test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), namely, whether each of two assertedly separate offenses "requires proof of an additional fact which the other does not." [3] Unquestionably, under that test, counts four and seven here are each separate offenses, as are also counts six and eight. Appellant further relies on "the rule of lenity" applied in the construction of criminal statutes and the penalties they impose, pursuant to which ambiguity as to congressional intent is resolved in favor of lenity. *See e.g., Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205

(1980). However, where the *Blockburger* test is met, that, in the absence of contrary legislative history or statutory wording, generally removes the ambiguity concerning congressional intent as to the separateness of offenses, which is the necessary predicate of the rule of lenity. *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981); *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 1283–84, 2 L.Ed.2d 1405 (1958).

Appellant is on stronger ground in her contention that the *Blockburger* test is not applied to find separate offenses where the act or transaction violates but a single statutory provision. *Blockburger* itself phrases the test as being applicable "where the same act or transaction constitutes a *violation of two distinct statutory provisions....*" 52 S.Ct. at 182 (emphasis added). Here, only one statutory provision is involved, section 922(a)(6). Since *Blockburger*, the Supreme Court has indicated that its test does not suffice to show separate offenses when but a single act or transaction and a single statutory provision are involved. *See Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 2182 & n. 24, 57 L.Ed.2d 43 (1978) [4]; *Gore*, 78 S.Ct. at 1283–84 [5]; *Braverman v. United States*,

---

*v. Long*, 524 F.2d 660 (9th Cir.1975) (two separate forms, each apparently having the same false information, each used to purchase a separate gun from the same dealer on one occasion, constitutes two offenses).

**3.** Appellant contends that the *Blockburger* test is not a rule of statutory construction or for determining congressional intent. We disagree. *See, e.g., Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740 (1985) ("[t]his Court has consistently relied on the test of statutory construction stated in *Blockburger* ... to determine whether Congress intended" multiple offenses); *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981) ("[t]he *Blockburger* test is a 'rule of statutory construction,' and ... serves as a means of discerning congressional purpose"); *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975) ("[t]he test articulated in *Blockburger* ... serves a ... function of identifying congressional intent to impose separate sanctions"); *United States v. Stovall*, 825 F.2d 817, 821 (5th Cir.1987); *United States v. Gibson*, 820 F.2d 692, 696, 698 (5th Cir.1987).

**4.** "Whether a particular course of conduct involves one or more distinct 'offenses' under the

statute depends on this [unit of prosecution] congressional choice.[24]

"24 ... Because only a single violation of a single statute is at issue here, we do not analyze this case under the so-called 'same evidence' test, which is frequently used to determine whether a single transaction may give rise to separate prosecutions, convictions and/or punishments under separate statutes. See, e.g., ... *Blockburger....*" *Sanabria*, 98 S.Ct. at 2182 & n. 24.

**5.** In *Gore*, the Court applied *Blockburger* to a case involving violation of separate statutes and distinguished its earlier decision in *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), on the following basis:

"This situation is *toto coelo* different from the one that led to our decision in *Bell v. United States....* That case involved application of the Mann Act, 18 U.S.C.A. § 2421,—a single provision making it a crime to transport a woman in interstate commerce for purposes of prostitution. We held that the transportation of more than one woman as a single transaction is to be dealt with as a single offense, for the reason that when Con-

317 U.S. 49, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942) (A single conspiracy is but one offense under the general conspiracy statute, notwithstanding it had multiple illegal objects; it "differs ... from a single act which violates two statutes. See *Blockburger*.... The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute, § 37 of the Criminal Code."). *See also Albernaz*, 101 S.Ct. at 1142–43 (single conspiracy denounced by separate statutes constitutes separate offenses under *Blockburger*; distinguishing *Braverman* because only one conspiracy statute involved there). Indeed, decisions such as *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958) (defendant's single discharge of a shotgun is but one violation of the predecessor to 18 U.S.C. § 111, denouncing assault on federal officers, notwithstanding that two such officers were wounded), and *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (single transportation of two women but one violation of Mann Act), can be reconciled with *Blockburger* (though neither cites it nor discusses its test) only on the assumption that *Blockburger* does not generally apply to single act-single statutory provision cases.[6] The same assumption implicitly underlies our decisions in *United States v. Hodges*, 628 F.2d 350, 351–52 (5th Cir.1980) (simultaneous receipt of multiple firearms in a single transaction constitutes but one violation of 18 U.S.C. § 922(h)), and *United States v. Carty*, 447 F.2d 964 (5th Cir.1971) (simultaneous trans-

portation in a single trip of multiple stolen firearms is but one violation of 18 U.S.C. § 922(i)), though neither cites *Blockburger* nor its test.

When a single statutory provision is violated, the relevant inquiry is "[w]hat Congress has made the allowable unit of prosecution," *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952). In this respect, "ambiguity" concerning Congress' intent "should be resolved in favor of lenity," so that "doubt will be resolved against turning a single transaction into multiple offenses," *Bell*, 75 S.Ct. at 622, where "[n]either the wording of the statute nor its legislative history points clearly to" the contrary. *Ladner*, 79 S.Ct. at 214.

*Bell* tells us that where there is simultaneous transportation of two women in a single trip, each woman is not the allowable unit of prosecution under the Mann Act; *Ladner* instructs that each federal officer wounded in a single discharge of a shotgun is not the unit of prosecution under section 111; *Hodges* and *Carty* establish that in instances of simultaneous receipt in a single transaction, or simultaneous transportation in a single trip, of multiple firearms, "Congress did not intend ... to make the firearms themselves the allowable units of prosecution," *Hodges*, 628 F.2d at 352, under sections 922(h) and 922(i). The present case, however, is not "on all fours" with these decisions, because in each of them the courts were dealing with individual items which were all part of *one* general

gress has not explicitly stated what the unit of offense is, the doubt will be judicially resolved in favor of lenity. It is one thing for a single transaction to include several units relating to proscribed conduct under a single provision of a statute. It is a wholly different thing to evolve a rule of lenity for three violations of three separate offenses created by Congress at three different times...." 78 S.Ct. at 1283–84.

6. We note that prior to *Blockburger*, the Court seems to have applied the "same evidence" test to find separate offenses when but a single statutory provision was involved. *See Burton v. United States*, 202 U.S. 344, 26 S.Ct. 688, 697, 50 L.Ed. 1057 (1906). However, *Burton* presented a case of successive, separate acts (agreement to receive and subsequent receipt) in violation of

the same statute. This is also true of *Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915) (slashing one mail bag after the other). *See Sanabria*, 98 S.Ct. at 2182 n. 24, distinguishing *Burton* and *Ebeling* on this basis. *Albrecht v. United States*, 273 U.S. 1, 47 S.Ct. 250, 253–54, 71 L.Ed. 505 (1927), holding possession and sale of the same "moonshine" are separate offenses, was apparently read in *Braverman* as involving "successive acts which violate a single penal statute" and distinguished on that basis. 63 S.Ct. at 102. Distinct, successive acts were also involved in *Carter v. McClaughry*, 183 U.S. 365, 22 S.Ct. 181, 191, 193, 46 L.Ed. 236 (1902) (conspiracy to defraud, and actually causing false claims to be made). The present case is not comparable to *Burton, Carter, Ebeling*, or *Albrecht*.

statutory category (women, federal officers, firearms). Here, each item is of a different general statutory category. Section 922(a)(6) speaks of "any firearm or ammunition." In count four, the "firearm" is alleged to be "one UZI, Model A, 9 Millimeter rifle"; in the parallel count seven, there is no firearm, but rather "ammunition" which is alleged to consist of "one box containing fifty (50) rounds of 9 Millimeter ammunition." Nevertheless, we conclude that this difference in statutory general categories is not adequate to take this case out of the rule of *Bell, Ladner, Hodges,* and *Carty,* or to indicate with sufficient clarity and lack of ambiguity an intent on Congress' part to make each general category the allowable unit of prosecution under section 922(a)(6) respecting a single act.

We note in this regard that what the language of section 922(a)(6)—quoted in note 1, *supra*—purports to denounce is not the acquisition or attempted acquisition of a firearm or ammunition as such, but rather "knowingly to make any false ... statement or to furnish ... any false ... identification" in connection therewith. That is, the language of this provision tends to show that the gravamen of the offense is the making of the false statement or furnishing the false identification. *See Huddleston v. United States,* 415 U.S. 814, 94 S.Ct. 1262, 1269, 39 L.Ed.2d 782 (1974) ("any false statement with respect to the eligibility of a person to obtain a firearm from a licensed dealer was made subject to a criminal penalty" by section 922(a)(6)). This, we conclude, is some indication that the allowable unit of prosecution should be calculated by reference to the making of the false statement. *United States v. Long,* 524 F.2d 660, 662 (9th Cir.1975) ("[t]he unit of prosecution proscribed [*sic*] by Congress was the giving of false information"). *See also United States v. Mastrangelo,* 733 F.2d 793, 800-02 (11th Cir. 1984). Here, on each of the two occasions in question—February 10 at the Gretna Gun Works and February 11 at the Sportsman's Gun and Accessories Shop—we have, in connection with the simultaneous acquisition of both a firearm and ammunition in the same purchase, the single act of furnishing the driver's license constituting the making of the statement and the furnishing of the identification, each false in the same single particular, namely, representing that Linda Evans was Louise Robinett. This, we conclude, establishes two, not four, violations of section 922(a)(6). Our holding in this respect is consistent with *United States v. Oliver,* 683 F.2d 224, 232-33 (7th Cir.1982), and *United States v. Pelusio,* 725 F.2d 161, 168-69 (2d Cir.1983), each of which held that simultaneous receipt in single transaction of a firearm and ammunition is but a single violation of section 922(h), which contains parallel "any firearm or ammunition" language.

The government stresses the phrase "or ammunition," and points to its being added to the bill which became section 922 after its original introduction. While this indicates a desire to expand the coverage of section 922, it does not speak clearly to the intended unit of prosecution in a case such as this. And, the word "or" may have been employed merely to make clear that "both" was not intended.

Our original opinion herein relied on *Normandale v. United States,* 201 F.2d 463 (5th Cir.1953), which held that the purchase in one transaction of both heroin and opium constituted two offenses under section 2553(a) of the Harrison Narcotic Act, which we characterized as providing that "it shall be unlawful to purchase opium, isonipecaine, coca leaves, opiate, or any compound, salt, derivative, or preparation thereof, except in or from the original stamped package." *Id.* at 464. On further consideration, however, we conclude that *Normandale* (which predates *Bell* but is subsequent to *Universal C.I.T. Credit Corp.*) is properly distinguished from the present case because the focus of the statute in *Normandale* was on different kinds of what were essentially items of contraband, while here the firearms and ammunition referenced in section 922(a)(6) are generally innocent, lawful items, and the focus of the statute is on the making of the false statement or furnishing the false identification.

We therefore hold that appellant, though she may be convicted and punished on ei-

ther count four or count seven, and also on either count six or count eight, may not be convicted or punished on both count four and count seven, nor on both count six and count eight. A remand to the district court to exercise its discretion to vacate the conviction on either count four or count seven, and also that on either count six or count eight, and to resentence appellant on such of said counts on which the conviction is not vacated, is thus in order. *Ball,* 105 S.Ct. at 1673–74.

Treating appellant's Suggestion for Rehearing En Banc as a petition for panel rehearing, the petition for rehearing is granted as hereinabove set out, and our prior opinion and mandate is to that extent (and only to that extent) modified. Appellant's convictions and sentences on each of counts one, two, three, five, nine, ten, and eleven are affirmed. The cause is remanded to the district court with directions to vacate the conviction and sentence on either count four or count seven and also on either count six or count eight, and to resentence appellant on those two of such four counts as to which it does not vacate the conviction and sentence.[7]

REMANDED.

---

7. No member of the panel nor Judge in regular active service of this Court having requested that the Court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35), the Suggestion for Rehearing En Banc is DENIED.